UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| BOBBI JO MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:21-cv-00067-AGF |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Bobbi Jo Moore was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 or supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.   For the reasons set forth below, the decision of the Commissioner will be affirmed.

**BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 23-1), as supplemented by Defendant (ECF No. 24-1).   Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on October 8, 1981, filed her applications for benefits on August 26, 2019.   She alleged disability beginning on August 1, 2015, due to osteoarthritis,

failed back syndrome, sciatica, facet joint syndrome, degenerative disc disease, fatty liver, enlarged spleen, Type II diabetes, an endocrine disorder, fibromyalgia, borderline personality disorder, obsessive compulsive disorder, panic attacks, clinical depression, generalized anxiety disorder, social anxiety, post-traumatic stress disorder, and possible bipolar.  Tr. 276.  Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A telephonic hearing was held on March 8, 2021.  Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing.  By decision dated April 8, 2021, the ALJ found that Plaintiff had the severe impairments of residuals of back surgery, a mood disorder, an anxiety disorder, and personality disorder.

The ALJ concluded that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations.  Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in the Commissioner's regulations, except:

> she can occasionally climb ladders, ropes, and scaffolds and frequently climb stairs and ramps.  She can occasionally stoop, kneel, crouch, and crawl. She can perform work that involves no more than occasional exposure to temperature extremes (hot and cold) and vibrations.  She must avoid hazards such as unprotected heights and dangerous machinery.  [She] is limited to work involving simple, routine tasks and simple work-related decisions, occasional interaction with the public and coworkers, occasional decision-making, and occasional changes in the work setting.  She cannot perform fast-paced work such as work on an assembly line.

Tr. 20.

In making these findings, the ALJ considered the opinion evidence of Plaintiff's

2

treating providers, psychiatrist Daniel Ulrich, M.D. and physician Jeffrey Davis, D.O., as well as agency medical consultants Jennifer Epperson, doctor of physical therapy, who conducted a physical consultative examination of Plaintiff in January of 2020; Frank Froman, Ed.D., a clinical psychologist who conducted a consultative psychological examination of Plaintiff in February of 2020; and Dennis McGraw, D.O., who did not examine Plaintiff but provided administrative medical findings in February of 2020 based on Plaintiff's medical records.

Next, the ALJ found that Plaintiff could perform certain light jobs listed in the Dictionary of Occupational Titles ("DOT") (mail sorter, shipping and receiving weigher, and document specialist), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.  Tr. 29-30.  Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on September 1, 2021.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that the ALJ erred by improperly assessing the opinion evidence of the above-noted treating providers and agency medical consultants.  Plaintiff asks that the ALJ's decision be reversed and that benefits be awarded, or the case be remanded for further proceedings.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found

4

at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Evaluation of Opinion Evidence**

Under the recently revised regulations, "treating physicians are no longer entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citation omitted). Rather, the ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "[T]he first two factors—supportability and consistency—are the most important." *Austin*, 52 F.4th at 728 (citations omitted).

Here, the ALJ adequately evaluated the persuasiveness of each medical opinion by considering the above-noted factors. With respect to Plaintiff's physical limitations, the ALJ properly evaluated the February 2020 administrative medical findings of Dr. McGraw. The ALJ determined that Dr. McGraw's opinion was largely supported by and consistent with the record as a whole. By contrast, the ALJ found the more extreme opinions of Plaintiff's primary care provider, Dr. Davis, largely unpersuasive.

Specifically, the ALJ found Dr. Davis's opinions that Plaintiff could not sit for more than 15 minutes without changing positions, could not stand or walk for more than a few minutes, and was incapable of repetitive lifting, bending, stooping, or twisting without significant pain, were all largely based on Plaintiff's subjective complaints and were inconsistent with Dr. Davis's own treatment records and the record as a whole. Tr. 25.

Particular inconsistencies noted by the ALJ included Plaintiff's conservative

6

treatment history after her 2015 spinal fusion surgery; her relieved or stable symptoms with pain medication at generally stable doses; her lack of further surgical intervention, injections, or emergent care; and her physicians' recommendations to exercise, all of which contradicted Plaintiff's allegations of disabling limitations. *See Austin*, 52 F.4th at 730 (noting that a lack of evidence of consistent treatment may undermine a claim of disability). The ALJ also noted that, after re-establishing primary care in June 2018 and complaining of chronic low back pain, Plaintiff had generally mild physical examination findings with no acute distress, intact lower extremity sensation, normal range of motion, negative straight-leg raising, and no use of an assistive device (contradicting Plaintiff's own testimony that she was unable to ambulate without a cane and had to lie down for five hours per day due to pain).[1] Tr. 22.

The ALJ further concluded that Dr. Davis's findings of severe limitations were undermined by a January 2020 physical examination by agency consultant Epperson, who found that Plaintiff's efforts were inconsistent with her true abilities. For example, although Plaintiff staggered and her left leg "buckled" when Epperson asked her to walk, Epperson observed Plaintiff walk to the restroom and back with minimal deviation or instability. Tr. 23, 589. Epperson also noted that Plaintiff feigned weakness by not fully gripping during grip strength testing, even though Epperson observed Plaintiff open a car door; pick up, hold, and grip her cane; and lift and move an object from the front seat of her car into the back seat of her car without difficulty. Tr. 21, 23, 55-56, 588-89.

---

[1]   Treatment notes spanning approximately five years likewise appear to indicate that the only times Plaintiff presented to an evaluation with a cane were to her January and February 2020 consultative examinations. Tr. 22-23, 53, 297, 588-89, 594.

7

Similarly, as the ALJ noted, Plaintiff stopped all range of motion movements during her consultative examination testing by wincing and grimacing despite not reaching the end of the available range; however, she was observed to have intact reflexes, no muscle atrophy, and no muscle spasms throughout the spine. Tr. 23, 589. And notwithstanding Plaintiff's allegations of disabling pain, Epperson noted that Plaintiff was able to resist movement during reports of pain with straight-leg raise testing and hip abduction testing, and to hold her hips in flexion with her knee extended for 30 seconds without giving way. Tr. 23, 588. Further, Epperson observed that Plaintiff displayed an "overreaction of pain with movement that is later performed with improved motion without signs of pain (when that [movement] is not the focus of the current assessment)." Tr. 589. Substantial evidence thus supported the ALJ's decision to discount the medical opinions to the extent they suggested more severe physical limitations. *See, e.g.*, *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 517-18 (8th Cir. 2019) (holding that an ALJ "may choose to disbelieve those subjective reports because there are inherent inconsistencies or other circumstances that cause the ALJ to question the reliability of the subjective reports."); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) ("The ALJ was entitled to draw conclusions about [the plaintiff's] credibility based on . . . analyses indicating that [the plaintiff] was exaggerating symptoms and giving less than his full effort.").

Likewise, with respect to Plaintiff's mental limitations, the ALJ properly concluded that the extreme limitations set forth in the opinions of Dr. Ulrich, Plaintiff's treating psychiatrist, were not persuasive. Specifically, the ALJ appropriately concluded that such limitations were inconsistent with Dr. Ulrich's own treatment records reflecting that

8

Case: 2:21-cv-00067-AGF Doc. #: 25 Filed: 03/21/23 Page: 9 of 11 PageID #: 999

Plaintiff's memory was grossly intact; Plaintiff was consistently cooperative, made good eye contact, and related well; and Plaintiff consistently demonstrated fair insight and judgment.[2] Tr. 19, 24-26.

Further, the ALJ found extreme mental limitations inconsistent with Plaintiff's relative lack of mental health treatment within the first three years of her alleged disability onset date and her consistently normal mental status examinations during that time, including normal mood, affect, behavior, judgment, and thought content. Tr. 23-24. The ALJ acknowledged that Plaintiff reported worsened depression and anxiety in March of 2018, but as the ALJ noted, Plaintiff had tapered herself off her medication at that time. Tr. 24, 380-81. Further, Plaintiff did not seek specialty psychiatric treatment until two months later, in May of 2018, and although she was tearful at that time, she was appropriately dressed and seemed self-aware of her mental health issues. Tr. 24; *see also* Tr. 445-46 (indicating that Plaintiff found the mental health clinic online with her attorney and requested to have a psychiatric evaluation and begin therapy).

After beginning psychiatric treatment with Dr. Ulrich, Plaintiff's mental status examinations continued to reflect normal mood and affect, intact insight and judgment, and normal memory; Plaintiff routinely denied auditory and visual hallucinations and delusions except for one occasion after she missed several doses of medicine (contradicting her own

---

[2] Dr. Ulrich also opined as to Plaintiff's physical limitations, including that Plaintiff suffered from fatigue and severe limitations in physical mobility. The ALJ appropriately discounted these opinions because Dr. Ulrich treated Plaintiff for mental rather than physical limitations and because, as noted above, Plaintiff's primary care treatment records did not reflect severe physical limitations and Plaintiff was found to have exaggerated her physical limitations during a consultative examination. Tr. 24-25.

9

testimony of frequent delusions and hallucinations); Plaintiff reported improved symptoms with medication at generally stable doses; and Plaintiff never required psychiatric hospitalization but received treatment only with therapy and medication. Tr. 19, 24, 858-68. Substantial evidence thus supports the ALJ's discounting of Dr. Ulrich's findings of more extreme mental limitations. *See, e.g.*, *Austin*, 52 F.4th at 728-29 (holding that a treating provider's opinion was properly discounted when it relied heavily on a plaintiff's self-reports and was inconsistent with the provider's own treatment notes and relatively conservative treatment); *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) ("We find no fault with the ALJ finding that such a conservative approach tended to show that [the plaintiff's] ailments were not disabling").

       The ALJ also properly evaluated Dr. Froman's February 2020 consultative opinion with respect to Plaintiff's mental limitations. The ALJ reasonably concluded that Dr. Froman's assessment that Plaintiff could relate adequately to others and understand oral and written instructions was consistent with the record as a whole, including Plaintiff's generally normal mental status examinations. Tr. 27. However, the ALJ properly discounted Dr. Froman's conclusion that Plaintiff was unable to perform one- and two-step assemblies at a competitive rate or withstand customary employment stress, as this conclusion was unsupported by the doctor's own observation that Plaintiff could rapidly and accurately add, multiply, and perform serial sevens. Tr. 27. The ALJ noted that Dr. Froman's findings of more severe mental limitations were based largely on Plaintiff's self-reported history and limitations, and were inconsistent with the doctor's largely unremarkable mental status examination of Plaintiff.

10

Importantly, the ALJ did not wholly discount the mental and physical limitations set forth in the medical opinion evidence. Rather, the ALJ carefully compared those limitations to the record as a whole and incorporated into Plaintiff's RFC those limitations that were consistent with the record. This is all the ALJ was required to do, and the Court cannot say that the ALJ's conclusion was outside the zone of choice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 21st day of March, 2023.